[Civ. No. 25272. Second Dist., Div. Two. Nov. 30, 1961.]

R. W. AGNEW, Plaintiff and Appellant, v. JOHN A. CRONIN et al., Defendants and Respondents.

R. W. Agnew, in pro. per., for Plaintiff and Appellant.

Oliver C. Hardy, in pro. per., Everett H. Smith and John A. Cronin for Defendants and Respondents.

FOX, P. J.—This is an action to recover damages[1] on the theory of fraud and conspiracy on the part of defendants to deprive plaintiff of his statutory privilege to promptly claim an exemption of funds under sections 690, 690.11 and 690.26, Code of Civil Procedure,[2] on which execution had been levied. The jury returned a verdict for both compensatory and exemplary damages against defendants Cronin, Hardy and Young.[3] Their motion for a new trial was granted. Plaintiff has appealed from that order. He has also appealed from the order denying his motion to vacate and set aside the order granting a new trial.

In September 1954 defendant Young, owner of a business building at 4215 So. Vermont Avenue, Los Angeles, leased it to defendant Palumbo for the purpose of operating a restaurant. Young desired to have certain electrical equipment installed. On or about November 4, 1954, he entered into a

---

[1]Plaintiff also alleged a cause of action for declaratory relief but it is not involved on this appeal.

[2]Code of Civil Procedure, section 690, provides: ''The property mentioned in Sections 690.1 to 690.25, inclusive, this code, is exempt from execution or attachment, except as therein otherwise specially provided, when claim for exemption is made to the same by the judgment debtor or defendant as hereinafter in Section 690.26 provided.''

Section 690.11, at the time of the transactions herein, provided: ''One-half of the earnings of the defendant or judgment debtor received for his personal services rendered at any time within 30 days next preceding the levy of attachment or execution where such one-half is necessary for the use of the debtor, or his family supported in whole or in part by such debtor.

''All of such earnings, if necessary for the use of the debtor's family, residing in this State, and supported in whole or in part by such debtor, unless the debts are: Incurred by such debtor, his wife or family, for the common necessaries of life; or, (b) incurred for personal services rendered by any employee, or former employee, of such debtor.''

Section 690.26 reads in part: ''If the property mentioned in Sections 690.1 to 690.25, inclusive, shall be levied upon under writ of attachment or execution, the defendant or judgment debtor . . . in order to avail himself of his exemption rights as to such property, shall deliver to the levying officer an affidavit of himself or his agent, together with a copy thereof, alleging that the property levied upon, identifying it, is exempt. . . .''

[3]The jury found in favor of defendants Palumbo and Rowe.

contract with plaintiff to do certain electrical work on said premises for $325. Additional services were performed and materials furnished amounting to $400.77, according to plaintiff. This latter amount, it seems, was the joint obligation of Young and his tenant, Palumbo. The total indebtedness was thus $725.77. Upon the completion of the entire project plaintiff presented Young, on December 14, 1954, with a bill for the last mentioned amount. Young disputed the amount of the bill in so far as it exceeded $325, the sum provided for in their agreement. However, Young gave plaintiff a check for the $325 at that time, but he stopped payment on it the next day on the advice of his attorney, defendant Cronin. Young admittedly owed plaintiff the $325 when he gave him the check. He stopped payment, according to his deposition, in order "to try to bring about some settlement of the entire matter of the charges against me." Agnew represented himself as being destitute and in dire need of these funds with which to provide the common necessities of life. He threatened to sue Young and Palumbo for the amount he claimed they owed him, viz., $725.77. Shortly after these incidents Cronin discovered, through a search of municipal court records, that defendant Rowe had a judgment against Agnew for $425, and that defendant Hardy was her attorney. Cronin thereupon called Hardy, whom he had known for many years, and inquired whether this judgment had been satisfied. Hardy replied, "No." Cronin asked, "Would you like to collect it?" Hardy said, "Yes." Cronin then advised him that Agnew was going to sue a client of his, C. N. Young, and if he did Agnew would get a judgment for at least $325 for his client, Young, admittedly owed Agnew that amount. Hardy thereupon inquired of Cronin as to Young's address, which Cronin furnished. Hardy prepared the necessary papers to levy on the debt Young owed Agnew and placed them in the hands of the sheriff, who made service on Young on or about December 29, 1954. After some delay, Young paid the $325 to the sheriff. This amount, less the sheriff's fees, was ultimately applied on the Rowe judgment. None of the parties informed Agnew that execution had been served on Young and that the money had been paid over to the sheriff. Agnew did not become aware of the levy for some months. As a result, Agnew was deprived of an opportunity to file, under the above code sections, a timely claim for exemption of these funds from execution on the ground that they represented moneys earned during the preceding 30 days for his personal services and

that they were necessary for the partial support of his family residing in this state. This, plaintiff asserts, was caused by fraud and conspiracy on the part of the defendants, and by reason of his destitute circumstances caused him great privation, pain and suffering.[4]

The jury awarded plaintiff $5,000 compensatory damages against Cronin, Young and Hardy. It also awarded $5,000 exemplary damages against Cronin; $2,000 against Young and $1,000 against Hardy.[5]

Defendants' motions for a new trial were granted "on the grounds of insufficiency of the evidence to justify the verdict."

In seeking a reversal, plaintiff's first contention is that the order granting defendants' motions for a new trial is void on the theory that the trial judge was "disqualified." Motions for a new trial were set for hearing on May 16, 1960. On April 28, 1960, plaintiff filed a motion with a supporting declaration pursuant to section 170.6, Code of Civil Procedure, to disqualify the trial judge from hearing the above motions. Plaintiff's declaration charged bias and prejudice on the part of the trial judge. It was based upon what transpired at the opening of the trial before any juror's name was drawn. The trial judge stated: "I would like you to know Mr. Agnew and the record to show, I have known Mr. Oliver Hardy [an attorney and one of the defendants] and Mr. Everett Smith [attorney for defendant Cronin] for thirty some years and that we are both members of the same legal fraternity. . . ." To this statement plaintiff responded to the effect that if this was to be a jury trial, and it was, the mere fact that the judge was acquainted with these attorneys made no difference whatsoever since the judge would not act as arbiter of the facts but merely pass on the legal questions. The motion to disqualify the trial judge was transferred to and heard by Judge Allen, who denied it. This ruling is unmistakably correct for plaintiff's motion was not timely. Section 170.6 provides, *inter alia,* that "[i]n no event shall any judge entertain such motion if it be made after the drawing of the name of the first juror. . . ." Here the case had been tried and the verdict

[4]For a summary of plaintiff's amended complaint and the law of the case see *Agnew* v. *Cronin,* 148 Cal.App.2d 117 [306 P.2d 527], which was an appeal from a judgment of dismissal following a demurrer sustained without leave to amend.

[5]In a prior action plaintiff sued Young and Palumbo for the $725.77 that he claimed one or the other or both of them owed him for the electric wiring he did on the building and the items that he furnished. Agnew recovered judgment for the full amount and it has been paid.

returned. At the outset plaintiff waived his opportunity to have the trial judge step aside and not try the case. Under the plain wording of the statute, he may not later change his mind and have the judge disqualified for bias and prejudice. The trial judge was not disqualified to hear the motions and his order granting a new trial was not void for that reason. This point has been decided adversely to plaintiff's position in *Jacobs* v. *Superior Court,* 53 Cal.2d 187 [1 Cal.Rptr. 9, 347 P.2d 9].

 Agnew's next contention is that defendants waived their right to move for a new trial by having failed to reserve that right at the time they moved for judgment notwithstanding the verdict, in accordance with the provisions of section 629, Code of Civil Procedure. (This provision was eliminated from that section by a 1961 amendment.) The record before us does not purport to give the verbatim form of the motion (which was oral) for judgment notwithstanding the verdict.[6] The minutes of the court simply recite that such a motion was argued and denied.[7] The minutes then recite that "Defendants' motion for stay of execution for 10 days from the determination of a motion for a new trial is granted."[8] From this it is apparent that a motion for a new trial was contemplated by all parties and the court. Plaintiff had notice thereof and so could not have been taken by surprise later when such motion was made. The record does not disclose whether a reservation of the right to make a motion for a new trial was or was not included in the motion for judgment notwithstanding the verdict.

While perhaps it might be inferred that the reservation was not made, it is at least equally reasonable to infer that it was made. Added significance is given to the latter inference since it does not appear that any objection was made to hearing the motion for new trial on the ground that the right to make such motion had been waived by not having reserved such right in connection with the motion for judgment notwith-

---

[6] We have a settled statement of the proceedings (prepared by plaintiff and stipulated to by counsel for defendants) but no official court reporter's transcript.

[7] In the settled statement on appeal it is recited, on this point, that counsel "orally move[d] the court for judgment in their favor notwithstanding the verdict against them"; that the motion was forthwith argued and denied.

[8] On this point the settled statement recites that counsel "then move[d] the court to stay execution of the judgment for ten days from a determination of a motion for new trial that may be filed, and the court grants the motion for stay of execution."

standing the verdict. But regardless, the burden is on appellant to make it affirmatively appear from the record that error has been committed in the court below. (*Guardianship of Blair*, 163 Cal.App.2d 319, 323 [328 P.2d 986], and cases there cited.) Plaintiff, as appellant, has failed to do this. The matter is left to surmise and conjecture. A reviewing court cannot reverse an order on such an uncertain foundation.

In a related point, Agnew also argues that defendants did not file their notice of intention to move for a new trial within the required statutory time. Written notice (dated April 3, 1960) of entry of judgment was filed by plaintiff on April 4, 1960. The notices to move for a new trial were filed on April 12 and 13. It is thus apparent that they were filed within 10 days after receiving notice of the entry of judgment as required by section 659, Code of Civil Procedure.

This brings us to the specific question: Did the court err in granting a new trial on the ground of insufficiency of the evidence? The guiding principles in ruling on such a motion are stated in *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689], and quoted with approval in *Richardson* v. *Ham*, 44 Cal.2d 772, 775 [285 P.2d 269], and in *People* v. *Sheran*, 49 Cal.2d 101, 109 [315 P.2d 5] : ''In passing upon a motion for a new trial on the ground of insufficiency of the evidence the rule is that ' [I]t is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence [citations]. In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial [citation], and where the only conflicts consist of inferences deduced from uncontradicted probative facts, the court may resolve such conflicts in determining whether the case should be retried [citation]. It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' '' (See also *Yarrow* v. *State*, 53 Cal. 2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687].)

The evidence introduced by Agnew to establish liability on the theory of a conspiracy was adequate only when aided by inferences favorable to his position that might be drawn from that evidence. But conflicting inferences might have been drawn, and, as we have seen, the trial judge ''may resolve such conflicts in determining whether the case should be retried,'' and he ''may draw inferences opposed to those

drawn at the trial'' by the jury. Viewing the evidence in its entirety, there is unquestionably ample evidence to support a contrary judgment, and it cannot therefore be said that the trial judge improperly granted a new trial.

Agnew contends that the new trial was granted on the ground that the damages were excessive. In support of his thesis he points to a comment made by the trial judge just prior to making his formal ruling to the effect that, assuming Agnew was entitled to recover, he was not entitled on any theory to recover anything like the amount of the verdict. The court then made the formal ruling, placing it specifically on the ground of insufficiency of the evidence. The law is settled that an appellate court reviews the *action taken* by the trial judge and not the judicial reasoning or comment. (*International etc. Workers* v. *Landowitz,* 20 Cal.2d 418, 423 [126 P.2d 609]; *Los Angeles City School Dist.* v. *Landier Inv. Co.,* 177 Cal.App.2d 744, 750 [2 Cal.Rptr. 662].) Squarely in point is *Yarrow* v. *State,* 53 Cal.2d 427 [2 Cal.Rptr. 137, 348 P.2d 687]. At page 439 the court stated: ''The order here in question used specific language granting the new trial [on the ground of insufficiency of the evidence to justify the verdict]. . . . Any language illustrative of the trial court's theory or contradictory to the order expressly made, is therefore irrelevant and must be disregarded.''[9]

Defendants seek to have reviewed the trial court's order denying their motion for judgment notwithstanding the verdict. Such an order may be reviewed on an appeal by the opposing party from an order granting a new trial. (Code Civ. Proc., § 629; *Williams* v. *Fairhaven Cemetery Assn.,* 52 Cal.2d 135, 138 [338 P.2d 392].)

A motion for judgment notwithstanding the verdict ''may properly be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is a determination that there is no evidence sufficiently substantial to support the verdict.'' (*Devens* v. *Goldberg,* 33 Cal.2d 173, 177 [199 P.2d 943]. See also *Champion* v. *Bennetts,* 37 Cal.2d 815, 820 [236 P.2d 155].)

---

[9]In connection with his argument that the new trial was granted because of excessive damages, Agnew argues extensively that the damages were not in fact excessive. Since we have determined that the order of the trial court must be sustained because the evidence would support a contrary judgment on the question of liability, the question of whether or not the damages were excessive becomes superfluous.

In this connection defendants' first contention is that none of the funds levied upon represented earnings from personal services during the preceding thirty days. Hence the very basis of the action is claimed to be lacking. This contention cannot be sustained. There is testimony to the effect that plaintiff performed services on this job on November 29, December 1, and December 11, 1954. Since the levy was made on December 29, any amounts earned on those days would have been subject to a proper claim of exemption.

Defendants' second contention in this regard is that there is no substantial evidence of a conspiracy. An examination of the evidence together with the inferences that might be drawn therefrom reveals that a jury decision either way on this question would have met the above-stated test with respect to the defendants involved in this appeal. It follows that the trial court properly denied their motions for judgment notwithstanding the verdict.

Plaintiff has also appealed from an order denying a motion to vacate the order granting a new trial. An appeal from an order denying a motion to vacate an appealable order will not be entertained when the purpose of the motion is merely to change the opinion of the trial court on the same facts, *and where the grounds* on which the party sought to have the order vacated *existed before the entry of the original order* and were available on an appeal from such order. (*Grenall* v. *Grenall,* 169 Cal.App.2d 748, 751 [337 P.2d 896]; *Neighbours* v. *Neighbours,* 62 Cal.App.2d 840 [145 P.2d 688].) The motion was based on the asserted disqualification of the trial judge on the ground of bias and prejudice.

The appeal from the order denying plaintiff's motion to vacate the order granting a new trial is dismissed. The order granting a new trial is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied December 27, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.